## Friedland Estate

*Norman Snyder*, for accountant.

*Guy G. deFuria*, for Pitzer Estate.

VAN RODEN, P. J., December 20, 1947.—The second paragraph of decedent's will reads as follows:

"After my death, Edgar Pitzer, shall operate and manage my drug store located at Third and Flower Streets, Chester, Delaware County, Pennsylvania, and from the proceeds thereof shall give to Frances Heiman of Dover, New Jersey, One Hundred Dollars ($100.00) per week for a period of two years. All

profits remaining from the management and operation of the business, the said Edgar Pitzer shall be entitled to retain as his own, for the aforesaid two year period."

The aforesaid Edgar Pitzer survived testator, operated and managed the aforesaid drug store for a period of several months, and then died prior to the expiration of the two-year period specified in decedent's will. The event of the death of said Edgar Pitzer has created questions concerning the nature and extent of the interest acquired by Frances Heiman by virtue of said paragraph of the will, and also the nature and extent of the interest of the said Edgar Pitzer thereunder. This necessitates a construction of the will in order to determine decedent's intention as expressed therein.

With regard to the interest of Frances Heiman, it seems clear that she has an equitable charge against the drug store business. An equitable charge is not a trust: A. C. I. Restatement of the Law of Trusts, §10. As stated in comment "f" under section 10:

"Whether an equitable charge or a trust is created depends upon the manifestation of intention of the transferor. If the transferor manifests an intention to impose a duty upon the transferee to deal with the property for the benefit of a third person and to give to the third person the beneficial interest therein, a trust is created; if he manifests an intention not to impose such a duty upon the transferee, but to give to the transferee the beneficial interest therein, and to give a security interest to the third person, an equitable charge is created."

In the instant case, testator did not make a transfer of the drug store business to any particular person. On the contary, he directed in paragraph three of his will that at the expiration of the aforesaid two-year period the said business shall be sold and the proceeds disposed of as part of his residuary estate. Accord-

ingly, neither of the persons mentioned in the second paragraph acquired any legal title to the drug store business; such legal title remains in decedent's personal representative. Nor is there any intention expressed in the will that either person mentioned in the second paragraph be given any beneficial interest in the business. There is, however, a manifestation of intention to give to the said Frances Heiman a security interest in the said drug store business, that is, testator obviously considered the drug store business as the source to which the said Frances Heiman should look for the stated weekly payments during the specified two-year period. To such extent, therefore, the said Frances Heiman has the benefit of a charge against the drug store business.

In Sharp's Estate, 7 Pa. Superior Ct. 372 (1898), it was held that a legacy may be charged upon particular property by implication, and that no special form of words is necessary to produce that effect when the intention is manifest. In that case, testator gave the "use" of a farm to certain persons with directions that said persons pay a stated sum annually to testator's widow while she remained his widow. Subsequently, the farm was sold for the payment of debts of decedent, at which time there were certain arrears of payments due the widow prior to a remarriage. It was held that she had a legacy charged by implication on the land and that she was entitled to a portion of the balance of the fund after payment of debts equal to the amount of the annuities for the period of widowhood.

In Semple's Estate, 189 Pa. 385 (1899), testator gave and devised unto his widow for life or widowhood all his real and personal property (which included a dry goods business), subject to the payment of certain annuities. It was held that the "annuities were a charge upon the estate, and were payable just as

debts were payable if there were sufficient assets for the purpose."

In Lefevre's Estate, 171 Pa. 404 (1895), where testator devised certain land subject to a charge of $5,000 payable in installments of $500 per annum, it was held that a fund derived from a. mortgage of the land must be applied by the executors to the payment of the charged legacies.

In Celenza v. Ruccia, 23 D. & C. 393 (1935), where a testator gave, devised and bequeathed real estate, profits of his business, and his "movible personal propertys" to one person, and provided that "from the said propertys" a certain sum was to be paid to another, it was held that the legacy was a charge on the real estate as well as the personal property.

It is well established that a bequest which by its terms refers to income of a business or a particular fund is considered demonstrative in nature and is payable primarily out of such business or fund, but, in the event of a deficiency, is a claim against the general assets of the estate: 6 A. L. R. 1366; 73 A. L. R. 1253. Likewise, in 69 C. J. §2111, it is stated that "A bequest of a certain sum, per day or month, or a sum to be ascertained, out of the proceeds of the testator's business has been held merely demonstrative and not specific." See Thompson's Estate, 25 York 140.

In the instant case, of course, there is presently no problem of deficiency of income from the business. The question is rather whether the business shall be continued for the remainder of the two-year period in order to continue payment of the annuity of $100 per week to Frances Heiman, or whether her interest in the net profits of the business terminated upon the death of Edgar Pitzer. In this connection, the following quotation from 4 Page on Wills §1455, appears to be pertinent:

"A provision for paying a legacy out of the net earnings of a business does not prevent it from being paid out of the principal."

Upon the basis of the foregoing authorities, it is concluded that the interest of Frances Heiman under the second paragraph of the will amounts to a legacy of $10,400 payable in weekly installments of $100 per week out of the profits of the drug store business, providing the business is continued for the full period of two years after testator's death, and that if the executor disposes of the business prior to payment in full of the legacy, the unpaid balance must be paid to said legatee out of the proceeds of the sale of the business.

In considering the interest of Edgar Pitzer under the second paragraph of the will, the first question to be determined is whether decedent intended to bequeath him a legacy or merely to provide compensation for operating and managing the drug store after the death of decedent. "Strictly speaking, a 'legacy' does not include compensation for services to be rendered after the testator's death": 69 C. J. 916, §2081. Thus, in Hughes v. Miscox, 174 N. Y. Supp. 564, 105 Misc. 521, it was held that a provision in a will that the executors employ a certain person in testator's business at a fixed salary was not a legacy to that person.

As stated in 4 Page on Wills §1577:

"A testator may provide in his will the amount of compensation to be paid for services to be performed for his estate after his death, by an executor, trustee, attorney, or the like. While an outright gift may be made by will to one who is named as executor which will be paid regardless of whether such person performs any service, a provision fixing compensation for services to be performed is not such a gift. Where the person named fails or refuses to perform the specified service, he is not entitled to the compensation

even though he may have been prevented from performing by act of God. If he performs partially, he will be entitled only to recover proportionately, or on a quantum meruit basis."

The same principle is stated to be the law in an annotation in 116 A. L. R. 362, as follows:

"Where there is a statement in a will to the effect that a certain testamentary provision is made in consideration of, or in contemplation of, services to be rendered after the death of the testator, or where it is apparent from the will that such was the design of the testator, the question may arise as to whether the right to take under the will is conditioned upon rendition of such services because of such recitals or the contemplation of the rendition of services. In solving this problem the rule is that where the person named in the will fails or refuses to act thereunder, even where prevented by an act of God, he is not entitled to the legacy or devise where it is conditioned upon the rendition of services."

In the instant case, there are certain manifest indications that decedent did not intend to bequeath a legacy to Edgar Pitzer but merely intended to specify compensation for future services. In the first place, there is no expression of gratitude for past services from which might be inferred an intention to confer a reward for any such services. The phrase "After my death, Edgar Pitzer shall operate and manage my drug store . . ." unquestionably refers to the expected performance of future services. In the next place, the compensation for such services is by no means certain but is limited to "all profits remaining from the management and operation of the business." In other words, unless the net profits exceeded $100 per week, Pitzer was not entitled to any compensation whatsoever. This would seem to indicate an intention on the part of testator to induce Pitzer to exert his best efforts so that the profits of the business would be

at least adequate to cover the stated weekly payments to Miss Heiman and to reward him for maintaining the business at that level after testator's death rather than to reward him for past services. It is also significant that testator specified that Pitzer shall be entitled only to "profits remaining from the management and operation of the business", whereas the payments to Miss Heiman are directed to be made out of the "proceeds" of the business, which might well be construed as cash receipts of the business and not necessarily profits. The final indication that testator intended to put Miss Heiman and Mr. Pitzer in different categories with regard to their respective interests in the net profits of the business is that fact that he also designated Miss Heiman as his principal residuary legatee but failed to mention Mr. Pitzer in any other provision in his will, thereby indicating that the weekly payments given to Miss Heiman in the second paragraph of the will were in the nature of an additional legacy to her but the payments to Mr. Pitzer were merely in consideration of future services which had to be performed in order to entitle him to the specified compensation.

A conclusive test seems to be this: If, after the death of testator, Mr. Pitzer had refused to operate and manage the drug store, would he have been entitled nevertheless to the remaining net profits? It seems very obvious that he would not have been so entitled, but would have had to accept the conditions specified by decedent, i. e., management and operation, before sharing in the remaining profits. Under the authorities above cited, failure or refusal to act under the will are similar in result and are equally effective to bar participation in any of the benefits specified in the will. This is so even though performance was prevented by an act of God. Accordingly, his death rendered further performance impossible and thereby terminated his interest to any future profits of the business.

The conclusion is that the estate of Mr. Pitzer is entitled to recover from the estate of this decedent a sum equal to the remaining net profits from the operation of the business (after the specified payments to Miss Heiman have been deducted) from the date of decedent's death to the date of Pitzer's death, but is not entitled to any of the profits of the business after the date of Pitzer's death, since his interest in the profits was conditioned upon his active operation and management of the business and such interest necessarily terminated when death rendered further performance impossible.