ELIZABETH MOHN, Plaintiff, and WILLIAM MOHN and JOHN F. MOHN, Interveners, Appellants, v. LOTTIE MOHN, ORA RUSSELL MOHN, MINNIE MOHN and FLORENCE JUNE MOHN, Appellees.

**Wills:** CONSTRUCTION: LIFE ESTATE. Where a will gives to the widow land during her life or during her widowhood, and provides that upon her death a son shall have it at a specified price, the proceeds to be divided among the children, the widow takes a life estate.

**Same:** DEVISE TO WIDOW: DISTRIBUTIVE SHARE: ELECTION: STATUTES. Under our prior statutes the widow might ordinarily take both a life estate and a distributive share in her husband's property, but where by the terms of a will she was given a life estate in the property, and a claim to her distributive share in addition to the devise created such an inconsistency as to defeat some provision of the will, she could not take both but was required to elect which she would take.

**Same:** ELECTION BY WIDOW: SUFFICIENCY. The report of a widow as executrix showing full settlement of the estate, in which she claimed that she was entitled to a life estate under the will and asked for a discharge, was a sufficient election to take a life estate in lieu of dower.

**Same:** CONSTRUCTION: ESTATE DEVISED. A will providing that on the death of a life tenant a certain heir shall have the land at a specified price, and that the proceeds thereof shall be divided among all the children, operates as a gift of the land to such heir charged with payment of the price to the other children, rather than a mere option to purchase the same.

**Same:** WHO MAY QUESTION DECREE. A widow who is given only a life estate in property can not complain of a decree creating a vested interest therein in another.

**Same:** ACCEPTANCE OF BEQUEST: PRESUMPTION. The devisee of a beneficial interest under a will will be presumed to have accepted the same; but he may withhold his assent and renounce the provisions made for him, in which case no interest passes to him.

**Same:** OPTION TO PURCHASE. A mere option to purchase land in accordance with the provisions of a will does not ordinarily confer any rights upon the optionee's representatives or successors.

**Same:** BEQUEST SUBJECT TO A CHARGE UPON THE PROPERTY: PASSING OF TITLE. Where a testator bequeaths the life use of his real estate to his wife and upon her death to a certain heir at a specified price, the proceeds to be equally divided among all his children, and there is no gift over in case such heir elects not to purchase, it is generally held that the devise creates simply a charge upon the land, and is not a condition precedent to the passing of title.

**Same:** CONTINGENT REMAINDER. Even though such a bequest should be held to create a contingent remainder, the contingency is one of event and not of person, and such an estate may be sold and will also pass to the devisees successors. But in the instant case the devisee elected to accept the bequest, and thus obligated himself and his heirs to pay the charges against the same.

**Same:** PURCHASE OF LIFE ESTATE: ORAL CONTRACT: STATUTE OF FRAUDS: EVIDENCE. An oral contract for the purchase of land is taken out of the statute of frauds where the vendee has taken possession under the contract, or where there is any other circumstance which, by the law in force when the statute was passed, would have taken the case out of the statute.

In the instant case the devisee taking the property charged with the widow's life estate and the payment of a stipulated price to other heirs, was, at the time of testator's death, living with him upon the property and managing the same, and subsequently continued the occupancy with the widow as her tenant. Thereafter pursuant to an oral contract for the purchase of the widow's interest she surrendered complete possession and the devisee made extensive improvements.

*Held,* sufficient to show a contract of purchase and to take the same out of the statute of frauds.

*Appeal from Jones District Court.*—HON. W. N. TREICHLER, Judge.

SATURDAY, JULY 9, 1910.

ACTION originally brought by plaintiff Elizabeth Mohn to quiet title to the lands in controversy. Defendants denied that plaintiff held anything more than a life estate in and to the lands, and this they alleged she had sold to

defendant Philip G. Mohn, now deceased, during his lifetime. They also alleged that plaintiff had been in possession of the premises since the death of Philip G. Mohn, and they asked an accounting and that she be enjoined from interfering with defendants' taking possession. The claim for an accounting was dismissed without prejudice during the trial of the case. William Mohn and John F. Mohn, sons of Conrad Mohn, deceased, intervened in the action and asked that the fee title be declared to be in the original plaintiff. On these issues the case was tried to the court, resulting in a decree dismissing plaintiff's and interveners' petitions and quieting title to the lands in defendants. Plaintiff and interveners appeal.— *Affirmed.*

*Randall, Courtney & Harding* and *Jamison, Smyth & Hann,* for appellants.

*Remley & Remley, Chas. W. Kepler & Son,* and *E. A. Johnson,* for appellees.

DEEMER, C. J.—Conrad Mohn died testate October 29, 1891, and his will was admitted to probate at the March, 1892, term of the Jones county district court. He left surviving his widow, Elizabeth Mohn, plaintiff in the present action, Philip Mohn, now deceased, John F. Mohn and William Mohn, interveners, and Minnie Mohn Murfield, one of the defendants, sons and daughter, his sole and only heirs at law. The widow is still living and unmarried. Philip Mohn died on or about October 9, 1906, · leaving surviving his widow, Lottie Mohn, and Ora Russell Mohn, Conrad Mohn, and Minnie Mohn, defendants, his children. Since his death there was born to his widow a daughter, Florence June Mohn, who is also a defendant.

The will of Conrad Mohn, which lies at the bottom of this controversy, reads as follows:

Know all men by these Presents that I, Conrad Mohn, of the county of Jones and State of Iowa of the age of Sixty-five years being of sound and disposing mind do hereby make Publish and declare this my last will and Testament in manner following hereby Revoking all former wills made by me.

1st. I, order and direct that all Just debts shall be Paid out of my Estate.

2nd. I give my wife Elizabeth Mohn my farm consisting of the following described Premises (to wit) The West half (½) of the north East quarter (¼) of Section Twenty-Eight (28) in Township Eighty-three (83) north of Range four (4) west of the 5th P. M. containing Eighty (80) acres more or less, Also the north East quarter (¼) of the north East quarter (¼) of Said Section Twenty-Eight (28) in Township and Range above described containing forty acres more or less, Also the west half (½) of the South West quarter (¼) of the South East quarter (¼) of Section Twenty-one (21) in Township and Range above described containing Twenty (20) acres more or less, During life or so long that she shall Remain my widow.

3rd. I Give and Bequeath to my son Williams two Daughters my organ.

4th. I Give and Bequeath to my said wife Elizabeth Mohn all of my Personal Property consisting of household goods, monies and credits and all other Personal Property on the Premises Belong to me Excepting organ formerly Bequeathed.

5th. I direct that after the Death of my wife my son Philip Mohn shall have the Land above described as forty-five dollars Per acre and the Proceeds of the same shall be divided among all my children, share and share alike.

6th. I order that my son Williams share shall Remain in said farm until all of his children shall Become of age then three Hundred dollars shall be Paid to him and the Bal of the shall be divided among his children share and share alike.

7th. I order that my said son William Mohn shall Receive the Interest on his share from the Death of my said wife until his children Becomes of age then the Principal be divided Between them share and share alike

after the Payment of the three hundred dollars to my said son William Mohn as above stated.

8th. And lastly I appoint my said wife Executor of this my last will and Testament.

Signed this first day of October, 1891.   Conrad Mohn.

The above Instrument Consisting of one Sheet was at the date thereof signed and declared by the said Conrad Mohn as and for his last will and Testament in Presence of us, who at his Request and in his Presence have subscribed our names as witnesses thereto.

H.  C.  Kurtz,      Lisbon, Linn county.
John  E.  Kurtz,   Lisbon, Linn county.

In order to avoid confusion we shall call the widow and interveners plaintiffs, as their claims are identical, and, save as hereinafter indicated, we shall treat the defendants as the representatives or successors of Philip Mohn, deceased.

Plaintiffs claim: First, that under the will of Conrad Mohn, deceased, Elizabeth Mohn, widow, took title to the real estate left by testator in fee simple absolute; second, that if she did not take the real estate in fee under the will, she took a life estate in all the lands and an undivided one-third in fee simple; and third, that in any event she is entitled to her distributive share in all the real estate left by her deceased husband, because she has in no manner surrendered the same.   Again plaintiffs contend that nothing passed under the fifth paragraph of the will save an option in Philip G. Mohn to purchase at the time of the death of the widow of Conrad, and that as Philip died without exercising his option, nothing passed to defendants as his successors under this fifth paragraph. Further claim is made that if the fee did not pass to Conrad's widow under the will, it did not pass to Philip and that the real estate should pass as if it had never been devised.   Defendants contend that nothing but a life estate passed to plaintiff, the widow; that this she sold for a valuable consideration to Philip during his lifetime;

that the widow elected to take a life estate in lieu of dower and that they, defendants, are entitled to have the title quieted in them to all the lands in controversy because Philip took a vested estate under the fifth paragraph of the will, burdened only with a lien to the amount of forty-five ($45) dollars per acre upon the land, to be divided among all of testator's children or their successors, share and share alike.

The first question is the nature of the devise to Elizabeth Mohn. A careful reading of the will indicates that it gave the real estate described to the widow during life or so long as she shall remain testator's widow. No other reasonable construction can be placed upon the second paragraph of the will. The following, among other cases, are conclusive upon this proposition: *Spaan v. Anderson*, 115 Iowa, 121; *Podaril v. Clark*, 118 Iowa, 268; *Simpkins v. Bales*, 123 Iowa, 64; *Steiff v. Seibert*, 128 Iowa, 748; *Wenger v. Thompson*, 128 Iowa, 754; *Webb v. Webb*, 130 Iowa, 460; *Scott v. Scott*, 132 Iowa, 37; *Hoefliger v. Hoefliger*, 132 Iowa, 576; *Luckey v. McGray*, 125 Iowa, 693.

1. WILLS: construction: life estate.

II. Testator died and the will was admitted to probate prior to the adoption of the Code of 1897. At the time of the probate of the will the statute with reference to the widow's distributive share read as follows: "Any person of full age and sound mind may dispose, by will, of all his property except what is sufficient to pay his debts, or what is allowed as a homestead, or otherwise given by law as privileged property to his wife and family." McClain's Code, section 3522 (section 2322, Code 1873.) "When the interests of creditors will not thereby be prejudiced a testator may prescribe the entire manner in which his estate shall be administered on; may exempt the executor from the necessity of giving bond, and may prescribe the manner in which his affairs shall be conducted

2. SAME: devise to widow: distributive share: election: statutes.

until his estate is finally settled, or until his minor children become of age." McClain's Code, section 3610 (section 2406, Code 1873). "One-third in value of all the legal or equitable estates in real property, possessed by the husband at any time during the marriage, which have not been sold on execution or any other judicial sale, and to which the wife has made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him." McClain's Code, section 3644 (section 2440, Code 1873). The widow's share can not be affected by any will of her husband, unless she consents thereto within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper record of the circuit [district] court." McClain's Code, section 3656 (section 2452, Code 1873).

Plaintiffs claim that the devise of the life estate to the widow was not inconsistent with her right to distributive share of one-third in the entire estate, and that she is entitled to both life estate and distributive share under the statutes before quoted. That there is some confusion in our cases construing these statutes is conceded. The underlying principle is that if there be such inconsistency between the estate devised and distributive share that the claim to the devise and to distributive share will defeat some provision of the will, the widow can not have both, but must elect as to which she will take. Manifestly it was testator's intent, under the second paragraph of the will, to give his widow a life estate, or rather a life estate or an estate during her widowhood, and by the fifth, sixth and seventh paragraphs he intended that upon the death of his wife the lands be sold, and at least $45 per acre of the proceeds thereof was to be divided among all his children, share and share alike. Whatever may be said regarding the legal effect of these last-named paragraphs of the will, it is clear that testator contemplated the disposition or sale of all his real estate in which his wife had

been given not more than a life estate and a distribution of the proceeds thereof. To give the widow one-third in fee, in addition to the life estate, would be inconsistent with the provisions of the will. In *Snyder v. Miller,* 67 Iowa, 261, it is said, regarding a like situation: "We can not adopt the claim of appellee's counsel that, in the direction to sell the real estate in the seventh paragraph, and in the disposition of the residue of his property in the sixth paragraph, the testator did not mean to dispose of all the real estate—all of the property—but only such interest in it as he owned, which was two-thirds; the one-third being the property of his wife. This construction appears to us to be strained and unnatural. He plainly directs the sale of the real estate—the land—and not any interest in the land. If he had intended to direct the sale of an undivided two-thirds of the land, he surely would have so stated."

In *Parker v. Parker,* 129 Iowa, 600, we said: "The controlling principle in all of the cases, which have allowed the widow to take under the will and under the law at the same time, is that her claim is not inconsistent or incompatible with the terms of the will. With this thought in mind, it is at once apparent that an application of the rule to a particular case depends wholly upon the will under consideration and can not be controlled by cases construing wills with different provisions." See as further sustaining these conclusions: *Daugherty v. Daugherty,* 69 Iowa, 677; *Warner v. Hamill,* 134 Iowa, 279; *Cain v. Cain,* 23 Iowa, 31. Some of our earlier cases doubtless announced a broader rule than this court is now willing to adopt, as will appear from some of the opinions just cited.

*Warner v. Hamill,* 134 Iowa, 279, relied upon by plaintiffs, is not in point. There was no direction that the real estate be sold as in the instant case, and the court found no such condition of repugnancy between the widow's taking distributive share and the other provisions of the will as to force her to an election. In that case we quoted

approvingly from *Herr v. Herr,* 90 Iowa, 538, *Daugherty v. Daugherty,* 69 Iowa, 677, and *in re Franke's Estate,* 97 Iowa, 704, the rule which we now adhere to.

Doubtless the court in construing the statutes found in the Code of 1873 did not at all times make proper distinctions or definitely preserve the lines of demarcation between the fact questions presented. It is true that ordinarily speaking there is no necessary inconsistency between a life estate in all of testator's land and a fee to one-third thereof in fee simple. That is to say, the widow might, in ordinary cases under the old statute, take both in so far as the claim of repugnancy between the two is concerned, but she could not take both, if the claim of distributive share in addition to the devise by will had the effect to defeat some other provision of the will. That testator intended a sale of the entire estate upon the death of his wife, and that neither she nor her successors should have any part of the proceeds of the sale or any title to the lands remaining at her death, is too clear for argument, and under previous holdings the widow was put to an election to take the lands described during life, or so long as she remained unmarried, or her distributive share under the statutes herein referred to.

III. Being required to elect, the question yet remains: Did she elect as provided by the statutes quoted, or has she so conducted herself as to be barred of her right to distributive share by reason of estoppel or election? This again is a troublesome question upon which our previous cases are in some confusion. The general rule announced by our previous cases is that to estop the widow from claiming under section 2452 of the Code of 1873 there must be a strict compliance therewith. *Bailey v. Hughes,* 115 Iowa, 304; *Byerly v. Sherman,* 126 Iowa, 447; *Jones v. Jones,* 137 Iowa, 385. But in many cases it has been held that an election need not be in writing, although it must in some

3. SAME: election by widow: sufficiency.

manner be made of record in the probate court. *Baldozier v. Haynes,* 57 Iowa, 683; *Houston v. Lane,* 62 Iowa, 291. In at least one case, to wit, *Goldizen v. Goldizen,* 107 Iowa, 280, a widow was estopped by conduct from claiming distributive share, although consent to take under the will was not entered of record. See, also, *Koep v. Koep,* 146 Iowa, 179.

No attempt need be made to harmonize these cases, for the record shows that the widow was appointed executrix of the will of her husband, and that she filed a final report in the probate court wherein she stated, among other things: "That under the terms of the will she was entitled to all the real estate during her lifetime and that she was given all the personal property of every description owned by deceased, except an organ which was willed to the daughters of her son William. . . . That the debts due by deceased and which she was required to pay by the terms of the will, she would report that the only debts owing by the deceased were as follows: . . . All of which she has paid together with the costs of administration. . . . More than two years have expired since publication of notice of her appointment as executrix, and no other claims having been filed, she asks that her actions herein be approved and that she be finally discharged and her bondsman released." This report was recorded in the probate record and constituted a sufficient election to take the life estate in lieu of dower. *Pellizzarro v. Reppert,* 83 Iowa, 497; *Craig v. Conover,* 80 Iowa, 355; *In re Franke's Estate,* 97 Iowa, 704. The claim of estoppel argued by appellees' counsel need not be further considered.

IV. For plaintiffs it is strenuously contended, however, that nothing passed by the fifth and subsequent paragraphs of the will save an option in Philip to purchase the lands at $45 per acre upon the death of the widow, Elizabeth, and that as he died without exercising this option, before the death

4. SAME: construction: estate devised.

of the widow, this right of purchase did not pass to his representatives or successors, and that, in so far as the real estate is concerned, it became intestate property and passed to the widow and the heirs of the deceased by descent, and not by purchase. The language of the will is peculiar. It says that upon the death of the wife the son Philip *shall have the land at $45 per acre,* the proceeds to be divided among testator's children, share and share alike. It then specifies what shall be done with William's share— that is to say, it is to remain in the land until all his children become of age, he to receive the interest thereon, and when his children all reach the age of majority he is to be paid $300 and the remainder divided among his children. Do these provisions create anything more than option in Philip to purchase? They most certainly do, for the proceeds of the sale, to a certain amount per acre, were disposed of and full direction given as to testator's desire with reference thereto. Even were it conceded that Philip had nothing more than an option to purchase, there was nevertheless a disposition of the proceeds of a sale of the land to certain named beneficiaries, a sort of equitable conversion of the real estate into personalty for the benefit of the named devisees or legatees, which a court of chancery, if not a probate court will protect and enforce, although Philip should elect not to purchase or fail for any reason to take the land and pay the purchase price. Philip undoubtedly might have renounced his right to take the land; but this would not have given plaintiffs any title thereto, for the reason that it was undoubtedly charged with a trust to the amount of the named purchase price, if nothing more, for the benefit of the parties named. In so far as plaintiff's case is concerned this thought disposes of it, for they must recover upon the strength of their own title, and not on the weakness of their adversaries'. The original plaintiff, the widow, can take nothing by reason of Philip's failure to elect before his death, for the

reason that under no conditions would she be entitled to any of the proceeds of the land. Again, neither she nor the interveners are claiming any interest under the fifth or any subsequent paragraphs of the will. So much as to plaintiff's case under the will.

V. The trial court in its decree found "that the defendants, by reason of the devise in the will of Conrad Mohn, deceased, to Philip Mohn, now deceased, have a vested interest in the lands (describing them) upon the condition and terms expressed in the fifth paragraph of said will. That the plaintiff, Elizabeth Mohn, transferred to Philip Mohn her use of the property in controversy during her life, in consideration of the yearly payment to her of the sum of $350. Therefore plaintiff's and intervener's petitions are dismissed and defendants, as widow and children of Philip Mohn, deceased, are entitled to the use and occupancy of said described land, so long as they pay to Elizabeth Mohn, plaintiff herein, the yearly sum of $350, and said defendants, upon the death of said Elizabeth Mohn, are entitled to the property in question absolutely upon their paying to the estate of Conrad Mohn, deceased, the sum of $45 per acre."

Plaintiffs complain of that part of the decree finding that defendants, as representatives or successors of Philip Mohn, have a vested interest in the land subject to a lien or trust in favor of testator's children as indicated in the fifth paragraph; and complain of the finding that Elizabeth Mohn had transferred her life interest to Philip. The widow, as we think, is in no position to complain of that part of the decree giving defendants a vested interest in the estate, for in no event would she be entitled to more than a life estate in the land. Interveners, who are testator's children, may, however, complain of that part of the decree giving defendants a vested estate in property, provided it be found that nothing was given Philip save an option to purchase,

5. SAME: who may question decree.

which he alone could exercise. In that event doubtless the entire estate, after taking out the life estate to the widow, passed either specifically or in trust to the testator's heirs, share and share alike. What then is the nature of the fifth paragraph of the will which says that after the death of the widow Philip shall have the land ·at $45 per acre, the proceeds to be divided among all testator's children, share and share alike?

Of course in one sense it was optional with Philip to take it at the expiration of the life estate. All devises may be said to be optional. *In re Stone's Estate*, 132 Iowa, 140.

**6. SAME: acceptance of bequest: presumption.** In other words, while assent of a devisee to an apparently beneficial devise will be presumed, he may withhold such assent and renounce the provision made for him, and in such case no interest passes to him. A beneficiary is presumed, however, to assent ·to the provisions made on his behalf, especially where they are beneficial in character.

Now ·there is no doubt in our minds that testator intended to give his son Philip all the real estate in controversy after the death of ·his wife, charged with the payment of a certain amount to each of testator's children. The testimony shows that Philip, before his death, accepted this devise in so far as he could do so, and it appears that before he died the devise was a beneficial one, and that the land was worth considerably more than the charges made against it by the testator. The decree passed by the trial court provides that defendants shall have the land upon paying the sum charged into the estate of Conrad Mohn, deceased. The question as to whether they shall have any of it back is not now presented, and defendants are not complaining of the fact that they are required to pay this amount upon the death of the widow, as is indicated in the decree hitherto set out. Plaintiffs are not complaining of the amount ordered paid, but they say that nothing

passed under the will save a personal option to Philip, which did not pass to his successors.

As we have already observed, this is not, in our opinion, the correct version of the matter. Of course a pure option under our holdings does not pass to the optionee's representatives or successors. *Myers v. Stone,* 128 Iowa, 10; *Conn v. Tonner,* 86 Iowa. 577. To this general rule there are, however, some exceptions under our statute which need not be noted at this time.

7. SAME: option to purchase.

It must be remembered that wills are given a little broader construction than contracts and the fundamental tenet of construction, where a will is involved, is to gather, if possible, testator's intent. This once found will be given force and effect, no matter what the language whereby it is expressed. No such formalities are generally required as in other instruments of purchase, and, save for a few arbitrary rules, testator's intent, when once discovered, will be carried out. In this case, as will be noticed, there is no gift over in the event Philip should elect not to purchase, and in such cases it is generally held. that the devise in such language as appears in the fifth paragraph simply creates a charge upon the land and is not a condition precedent to the passing of title. *Allen v. Allen,* 121 N. C. 328 (28 S. E. 513); *Woods v. Woods,* 55 N. C. 420; *Wyckoff v. Wyckoff,* 49 N. J. Eq. 344 (25 Atl. 963); *Weiler's Estate,* 169 Pa. 66 (32 Atl. 101). See, also, as bearing upon this same subject: *Wise's Estate,* 188 Pa. 258 (41 Atl. 526); *Lefevre's Estate,* 171 Pa. 404 (33 Atl. 363); *Thompson v. Hoop,* 6 Ohio St. 480.

8. SAME: bequest subject to a charge upon the property: passing of title.

In *Henry v. Griffis,* 89 Iowa, 543, we held that a devise somewhat similar to the one at bar creates a charge upon the land in the hands of the devisee. To the same effect: *Woodward v. Walling,* 31 Iowa, 533. See, also, *Hanes v. Munger,* 40 Ohio St. 493; *Chase v. Warner,*

106 Mich. 695 (64 N. W. 730); *Hunkypillar v. Harrison,*
59 Ark. 453 (27 S. W., 1004); *Gilbert's Appeal,* 85 Pa.
347.

While plaintiff's counsel constantly speak of the fifth
paragraph of the will as creating a mere option, and cite
authorities which they claim support such view, we think
their real contention is that the estate, if any, received
by Philip was contingent remainder, or an estate upon
condition precedent, performance of which was necessary
to the vesting of any estate. None of the cases cited by
them treat such language as is here found as a mere option
to purchase. Some of them might be cited in support of
the proposition that Philip did not take a vested estate,
but rather a contingent or conditional one; but the better
authorities seem to hold that the estate created by the
language used is either a vested remainder subject to a
charge upon or trust in the land, or a conditional or con-
tingent remainder, the condition being construed to be a
subsequent one not suspending the vesting of the estate.
See many of the authorities heretofore cited and particu-
larly *Hanes v. Munger,* 40 Ohio St. 493, and *Woodward v.
Walling,* 31 Iowa, 533, *supra.*

Even if the remainder be conditional or contingent
upon Philip's paying the sum specified, it is generally held
that such an estate may be sold and will also pass to the
devisee's successors. *Cummings v. Stearns,*
161 Mass. 506 (37 N. E. 758). A con-
tingent remainder may be devised where the
contingency is one of event, and not of person. *Ingilby v.
Amcotts,* 21 Beav. 585; *Collins v. Smith,* 105 Ga. 525 (31
S. E. 449); *Buck v. Lantz,* 49 Md. 439; *Loring v. Arnold,*
15 R. I. 428 (8 Atl. 335); *Clark v. Cox,* 115 N. C. 93
(20 S. E. 176); *Kenyon v. See,* 94 N. Y. 563; *Barnitz
v. Casey,* 7 Cranch, 469 (3 L. Ed. 403); *Winslow v.
Goodwin,* 7 Metc. (Mass.) 363. Nothing said in *McClain
v. Capper,* 98 Iowa, 145, runs counter to these views.

9. SAME:
contingent
remainder.

There the contingency was as to person and not as to event. *Hadley v. Stuart,* 62 Iowa, 267, also supports the views heretofore announced.

In so far as the proposition now before us is concerned it may be solved by the single thought that Philip elected to accept the devise before his death, obligating himself and his heirs to pay the charges against the same. *Williams v. Nichol,* 47 Ark. 254, (1 S. W. 243); *Porter v. Jackson,* 95 Ind. 210 ( 48 Am. Rep. 704); *Gilbert v. Taylor,* 148 N. Y. 298 (42 N. E. 713); *Brown v. Knapp,* 79 N. Y. 136; *Case v. Hall,* 52 Ohio St. 24 (38 N. E. 618, 25 L. R. A. 766); *Wyckoff v. Wyckoff,* 48 N. J. Eq. 113 (21 Atl. 287). Under our rule, however, it may be that neither he nor his successors would be bound for anything more than the value of the property. *Pitkin v. Peet,* 87 Iowa, 268. But that point need not now be decided.

VI. The last and only other point in the case is the correctness of the finding of the trial court that defendants are entitled to immediate possession of the land, because of the claim that Philip Mohn purchased his mother's life estate before his death. This finding is challenged by plaintiffs upon two grounds: First, because the testimony does not sustain the claim; and, second, because the contract, if one was made, is within the statute of frauds and therefore void. We are constrained to hold that a preponderance of the testimony shows a purchase of the widow's life estate by Philip Mohn before his death, and that he took possession of and made improvements upon the land relying upon his contract of purchase. It was also agreed that Philip should pay his mother the sum of $350 annually until her death, in consideration of the conveyance of the life estate to him. This amount has been paid and plaintiff, down until the death of Philip, made no claim of title to the land. Something like six witnesses testify to such a contract and while the widow denies it and there

10. SAME:
purchase of
life estate:
statute of
frauds:
evidence.

is also other testimony which tends to negative any such agreement, we believe the circumstances point strongly to the fact that such an agreement was made and recognized down to the time of Philip's death. After that John Mohn, Philip's administrator, assumed control of and rented the land and shortly before the commencement of this suit, as we understand it, the widow resumed possession thereof.

As plaintiffs did not plead the statute of frauds or object to the oral testimony offered to sustain the alleged contract, we might, under the doctrine of *Crossen v. White,* 19 Iowa, 111; *Holt v. Brown,* 63 Iowa, 322, and *In re Snyder,* 138 Iowa, 553, and other like cases, refuse to consider that question in its relation to the case. But, passing that point, we think the testimony shows such a change in the possession of the farm and such expenditures made by Philip Mohn during his lifetime on the faith of the contract as takes the oral agreement out of the statute. It will be remembered that the statute does not apply when the vendee has taken and held possession of the property under and by virtue of the contract, or when there is any circumstance which, by the law in force when the statute was passed, would have taken the case out of the statute. Code, section 4622.

Now, the testimony shows that testator and his wife lived upon the farm in question before testator's death; the son Philip living with them and managing the land. After testator's death the widow lived upon the farm; her son living with her and managing the farm, no doubt as a tenant down to near the time of his (Philip's) marriage. In view of that marriage and of the widow's desire to leave the farm and move to town, the contract for the sale of her life estate was entered into. It was then arranged that the widow should leave the farm, that Philip should take and hold possession thereof, his wife becoming his housekeeper in place of his mother, and that he should pay the mother the amount agreed upon. Pursuant to this

agreement Philip took his new wife to the farm and he, Philip, made substantial and valuable improvements thereon and treated it as his own down to the time of his death. Elizabeth immediately moved off the place, took her furniture therefrom, and established a new home at Lisbon. Philip refurnished the house, brought his bride thereto, and made the improvements already indicated. These facts, as it appears to us, bring the case within the exceptions to the statute. Conceding that Philip was in possession as tenant at the time the alleged contract was made, he was, nevertheless, in joint possession with his mother; he was in fact living with her upon the farm. Plaintiff desired to leave the farm and Philip wished to take his new wife thereto. In consequence the contract was made and the changes already indicated occurred in the possession. As Philip's possession after the making of the contract was clearly referable thereto, there was such a taking and holding thereof as brings the case within the exception to the statute. Moreover, in view of the expenditures made by Philip on the strength of the contract and of the payments or obligations made for the land, it would be a fraud upon Philip or his successors to allow plaintiffs to rely upon the statute. *Gregory v. Bowlsby,* 115 Iowa, 327, s. c. 126 Iowa, 588.

The case fairly bristles with propositions of law and fact, and upon some of the former there is a conflict in the authorities. We have gone through it in the light of our former holdings, and where we have no rule already established have announced one which we believe to be correct on principle and sustained by authority, with the result that we find nothing in the decree of the trial court of which plaintiffs may justly complain.

It is therefore in all respects *affirmed.*